UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHUKWUNONSO OBIORA,<br><br>a/k/a "Nonso Obiora",<br><br>Defendant | Criminal No. 24-cr-10011<br><br>Violations:<br><br>Count One: Conspiracy to Obtain a United States Passport through False Statements<br>(18 U.S.C. § 371)<br><br>Count Two: Money Laundering Conspiracy<br>(18 U.S.C. § 1956(h))<br><br>Passport Fraud Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(6))<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

SUPERSEDING INFORMATION

At all times relevant to this Superseding Information:

General Allegations

1.      The defendant, CHUKWUNONSO OBIORA, also known as "Nonso Obiora" (hereinafter "OBIORA"), was a citizen of Nigeria who lived in Massachusetts and Nigeria. OBIORA was deported from the United States in or about December 2021.

2.      Co-conspirator 1 ("CC-1"), one of OBIORA's close relatives, was a United States citizen living in Massachusetts.

3.      Co-conspirator 2 ("CC-2"), co-conspirator 3 ("CC-3"), co-conspirator 4 ("CC-4"), and co-conspirator 5 ("CC-5") lived in Massachusetts.

4.      Business email compromise ("BEC") schemes were a type of fraud targeting victim companies that made and received payments by wire transfer.  In a typical BEC scheme, cybercriminals obtained unauthorized access to a victim company's computer or email network

and used that access to familiarize themselves with the victim company's accounts payable or receivable, recurring payments, or scheduled financial transactions.  Cybercriminals then sent fraudulent emails to the victim company that appeared to come from a trusted source, such as a creditor, a counterparty to a transaction, or an accounting supervisor.  The fraudulent emails requested changes to wiring and other payment instructions that resulted in the victim company sending money to bank accounts controlled by participants in the BEC scheme.

*The Victim Companies*

5.      Victim Company 1 was a travel company in New York.

6.      Victim Company 2 was a distribution company in Wisconsin.

7.      Victim Company 3 was as a consulting company in Kentucky.

8.      Victim Company 4 was a wholesaler in New Jersey and New York.

9.      Victim Company 5 was a clothing retailer in Italy.

Object and Purposes of the Passport Fraud Conspiracy

10.      The object of the passport fraud conspiracy was to obtain a United States passport bearing CC-1's name and OBIORA's photograph by means of a false statement on a United States passport application.   The principal purposes of the conspiracy were to obtain for OBIORA a fraudulent passport that he could use to re-enter the United States and to conceal the existence of the conspiracy from law enforcement.

Manner and Means of the Passport Fraud Conspiracy

11.      Among the manner and means by which OBIORA and CC-1 carried out the passport fraud conspiracy were the following:

        a.      reporting CC-1's lawfully issued United States passport as lost or stolen;

2

b.      applying for a replacement passport for CC-1 by completing a U.S. Passport Renewal Application for Eligible Individuals ("Form DS-11") that contained CC-1's name and OBIORA's photograph;

c.      signing the Form DS-11 and swearing under penalty of perjury that the photograph of OBIORA submitted on the Form DS-11 was a "genuine, current photograph of [CC-1]";

d.      receiving the issued passport containing CC-1's name and OBIORA's photograph; and

e.      sending the fraudulently obtained passport to OBIORA in Nigeria.

Overt Acts in Furtherance of the Passport Fraud Conspiracy

12.      From at least as early as in or about May 2023 and continuing through in or about October 2023, OBIORA and CC-1 committed and caused to be committed the following overt acts, among others, in furtherance of the passport fraud conspiracy:

a.      On or about May 10, 2023, CC-1 reported his United States passport lost or stolen on a United States Department of State Form DS-64, "Statement Regarding a Valid Lost or Stolen U.S. Passport Book and/or Card";

b.      On or about May 10, 2023, at a United States Post Office in Watertown, Massachusetts, CC-1 signed a Form DS-11 that contained CC-1's name and OBIORA's photograph;

c.      On or after August 16, 2023, CC-1 sent the fraudulently obtained passport bearing his name and OBIORA's photograph to OBIORA in Nigeria.

Overview of the Money Laundering Conspiracy

13.     Between at least as early as March 2021 and continuing through in or about May 2023, OBIORA, CC-1, CC-2, CC-3, CC-4, CC-5 and others known and unknown to the Acting United States Attorney agreed with each other and with others to receive and withdraw the proceeds of BEC schemes from bank accounts that they controlled, to deposit some of those proceeds into other bank accounts that they controlled, to convert some of the proceeds to cash, and to wire some of the proceeds overseas, all as part of an effort to conceal that the funds were the proceeds of criminal activity.

Manner and Means of the Money Laundering Conspiracy

14.     Among the manner and means by which OBIORA, CC-1, CC-2, CC-3, CC-4, CC-5, and others known and unknown to the Acting United States Attorney carried out the money laundering conspiracy were the following:

*Establishing Bank Accounts to Receive BEC Scam Proceeds*

a.     obtaining without lawful authority individual victims' means of identification, including their names, addresses, and dates of birth, among other personally identifiable information ("PII");

b.     obtaining fraudulent driver's licenses bearing OBIORA and others' photographs and the individual victims' PII ("Fraudulent Identification Documents");

c.     using Fraudulent Identification Documents to incorporate Massachusetts businesses;

d.     using Fraudulent Identification Documents to open accounts at financial institutions in the names of Massachusetts businesses ("Identity Theft Bank Accounts");

4

e.  recruiting co-conspirators to incorporate purported businesses in their own names ("Shell Companies") and to open bank accounts in the names of those Shell Companies ("Shell Company Bank Accounts");

f.  recruiting co-conspirators to allow the use of legitimate business bank accounts to receive BEC scheme proceeds ("Business Bank Accounts") (together with Identity Theft Bank Accounts and Shell Company Bank Accounts, "Destination Accounts");

*Providing Destination Accounts to BEC Scammers*

g.  providing information regarding the Destination Accounts to co-conspirators, who sent them to BEC scheme victims as bank accounts to which the victims should direct wire transfers;

*Receiving and Withdrawing BEC Scam Proceeds from Destination Accounts*

h.  monitoring Destination Accounts for the deposit of BEC scheme proceeds;

i.  communicating with co-conspirators regarding the deposit of BEC scheme proceeds into the Destination Accounts;

j.  withdrawing money quickly from the Destination Accounts, by check, ATM, wire transfer, and other financial transactions, before BEC scheme victims learned that they had been tricked into sending money to the Destination Accounts;

k.  depositing BEC scheme proceeds into other Destination Accounts;

l.  wiring BEC scheme proceeds to OBIORA and others in Nigeria, China and elsewhere;

m.  communicating regarding the withdrawal of funds from Destination Accounts; and

5

*Concealing the Existence of the Conspiracy*

n.      forging business invoices and writing false memos on checks to suggest that the BEC scheme proceeds deposited into Destination Accounts were legitimate business revenues;

o.      making false statements to banks regarding the nature of the BEC scheme proceeds deposited into Destination Accounts;

*Profiting from the Conspiracy*

p.      sharing among the U.S.-based co-conspirators at least as much as 40 percent of the deposited BEC scheme proceeds as payment for their roles in the conspiracy.

<u>Acts in Furtherance of the Money Laundering Conspiracy</u>

15.      Between at least as early as March 2021 and in or about May 2023, OBIORA, CC-1, CC-2, CC-3, CC-4, CC-5 and others known and unknown to the Acting United States Attorney committed and caused to be committed the following acts, among others, in furtherance of the money laundering conspiracy:

*Establishing Destination Accounts*

a.      On or about March 6, 2021, OBIORA messaged CC-2 an image of a fake Pennsylvania driver's license bearing OBIORA's photograph and the PII of Victim 1, a resident of Pennsylvania.

b.      On or about March 6, 2021, OBIORA directed CC-2 to incorporate a Massachusetts logistics business that used Victim 1's initials ("the Victim 1 Logistics Business").

c.      On or before March 18, 2021, CC-2 opened a Destination Account in the name of a Massachusetts landscaping business ("the Landscaping Business") at JPMorgan Chase Bank.

d.      On or about March 26, 2021, OBIORA messaged CC-2 an image of a fake Texas driver's license bearing OBIORA's photograph and the PII of Victim 2, a resident of Texas.

e.      On or about March 31, 2021, CC-2 opened a Destination Account in the name of the Landscaping Business at Wells Fargo Bank.

f.      On or about April 4, 2021, OBIORA incorporated or directed a co-conspirator to incorporate a second Massachusetts landscaping business in the name of Victim 2 ("the Victim 2 Landscaping Business").  The Victim 2 Landscaping Business purported to offer general landscaping and masonry services from an address on Summer Street in Somerville, Massachusetts.

g.      On or about April 7, 2021, OBIORA opened or directed a co-conspriator to open a Destination Account in the name of the Victim 1 Logistics Business at JPMorgan Chase Bank.

h.      On or about April 9, 2021, OBIORA opened or directed a co-conspirator to open a Destination Account at JPMorgan Chase Bank in the name of the Victim 2 Landscaping Business.

i.      On or about April 22, 2021, CC-4 incorporated a purported Massachusetts design business bearing CC-4's name ("the Design Business").

j.      On or about July 22, 2021, CC-4 opened a Destination Account at JPMorgan Chase Bank in the name of the Design Business.

k.      On or about January 13, 2022, CC-3 incorporated a Massachusetts business that purported to offer residential painting and general carpentry services ("the Painting Business").

l. On or about February 2, 2022, CC-3 opened a Destination Account at JPMorgan Chase Bank in the name of the Painting Business.

m. On or about March 8, 2022, CC-3 opened a Destination Account at Wells Fargo Bank in the name of the Painting Business.

n. On or about March 17, 2022, OBIORA stored CC-5's name and PII, and the first name of a purported carpentry business ("the Carpentry Business") in his phone.

o. On or about March 18, 2022, CC-5 incorporated the Carpentry Business in Massachusetts.  The Carpentry Business purported to offer general carpentry and remodeling services, and to operate on Summer Street in Somerville, Massachusetts, across the street from the Victim 2 Landscaping Business.

p. On or about March 24, 2022, at 12:11 a.m. (UTC), OBIORA stored the routing and account numbers for the Painting Business' Destination Account at Wells Fargo in his phone.

q. Approximately eight minutes later, OBIORA messaged the same information to CC-1.

r. On or about March 30, 2022, CC-5 opened a Destination Account at Citizens Bank in the name of the Carpentry Business.

s. On or about April 28, 2022, CC-5 opened a Destination Account at Wells Fargo Bank in the name of the Carpentry Business.

*Victim Company 1 - $110,197.69 BEC to CC-2's Landscaping Business*

t. On or about March 18, 2021, a co-conspirator sent Victim Company 1 a BEC scheme email that caused it send by ACH transfer $110,197.69 to the JPMorgan Chase

account in the name of CC-2's Landscaping Business, instead of to the bank account of Victim Company 1's creditor.

u.      On or about that same day, March 18, 2021, OBIORA messaged CC-2, "Call me", "It's important!!", "I didn't get any of the screenshots", "These [people are] on my back…I need the screen shots."

v.      In response, CC-2 messaged OBIORA a screenshot showing that Landscaping Business Destination Account to which Victim Company 1 sent the BEC scheme proceeds had a $0 balance.

w.      In reply, OBIORA messaged CC-2, "It should be there tomorrow morning!!!" and sent CC-2 an image of a communication between Victim Company 1 and the BEC scammers evidencing Victim Company 1's intent to transfer $110,197.69 to its creditor.

x.      On or about March 19, 2021, the same day that the BEC scheme proceeds posted to the CC-2 Landscaping Business Destination Account, CC-2 messaged OBIORA, "It's there".   Within seconds, OBIORA messaged in response: "I'm coming to the cape now to get the checks.   Please follow my lead and let me take care of getting the money out."

y.      On or about March 19, 2021, CC-2 messaged OBIORA, "how much will I get in total", to which OBIORA responded with a screenshot of a calculator showing the figure "18,000" and the message, "U get that after I liquidate the account…please don't do any transaction wit[h] the card or account."

z.      On or about that same day, March 19, 2021, at a home in Brockton, Massachusetts, CC-2 left for OBIORA two Landscaping Business checks totaling $109,000.   One of the checks, for $52,000, was payable to the name of Victim 1, the alias OBIORA had used to

incorporate the Victim 1 Logistics Company.

        aa.     Also on or about March 19, 2021, OBIORA instructed CC-2, "One last thing, pay attention to ur email and phone because [C]hase might call you to make sure you are the ones who wrote the checks out before they clear it in the other accounts ok??"

        bb.     On or about March 23, 2021, after JPMorgan Chase had rejected both checks, OBIORA instructed CC-2 to call JPMorgan Chase and to "ask them why they reversed the two checks you wrote.   Just in case they ask where the 110 came from tell them it came from an investor whose [sic] investing in [your] company to buy new trucks and equipment."

        cc.     On or about March 21, 2021, CC-2 caused the Landscaping Business Destination Account to issue a $52,000 check payable to CC-1.

        dd.     On or about March 25, 2021, CC-2 caused the Landscaping Business to issue a $18,000 check payable to CC-2, representing CC-2's promised share of the BEC scheme proceeds.

        ee.     On or about March 30, 2021, CC-1 sent OBIORA a screenshot showing a balance of approximately $52,000 in a Harbor One Bank account in CC-1's name.   CC-1 messaged OBIORA to request "10 pk [$10,000] my way, RESPECTFULLY".   In response, OBIORA messaged CC-1, "Yea ok...go see ur lawyer ASAP for that lol".

        ff.     On or about March 30, 2021, OBIORA messaged CC-1 the name and bank account number for a purported hair products company in Heinan, China, and the message, "Let him move the 41k here".   In response, CC-1 messaged OBIORA, "Hope they don't ask me bout no shit I have no info on".

        gg.     On or about March 30, 2021, CC-1 wired $41,000 to China as OBIORA

had instructed and, in response to OBIORA's request to "send the pic of the whole wire paper pls...they on my back", messaged OBIORA a photograph of the wire confirmation with CC-1's identifying information crossed out.

*Victim Company 2 - $217,220.21 BEC to CC-4's Design Business*

hh.     On or about June 30, 2021, approximately three weeks before CC-4 opened a JPMorgan Chase account in the name of the Design Business, CC-1 sent the name and address of the Design Business, along with CC-4's PII, to OBIORA.

ii.     On or about August 26, 2021, a co-conspirator sent Victim Company 2—the Wisconsin supply company—an email that caused it to wire approximately $217,220.21 to the Design Business' new bank account.

jj.     On or about August 26, 2021, CC-4 made a check for $50,000 payable to the Victim 1 Logistics Company that OBIORA controlled.

kk.     On or about August 26, 2021, CC-4 made check for $97,000 payable to CC-4 personally.

ll.      On or about August 30, 2021, CC-4 withdrew $9,500 in cash from the Design Business' Destination Account.

mm.    On or about August 30, 2021, CC-4 wired $48,000 from the Design Business' Destination Account to an account in the name of a purported chemical export company in Germany.

*Victim Company 3 - $800,000 BEC to the Victim 2 Landscaping Business Destination Account*

nn.     On or about February 25, 2022, a co-conspirator sent Victim Company 3 a BEC scheme email that purported to be from its licensor.  The email requested that Victim

Company 3 direct an $800,000 payment to a Citizens Bank Destination Account in the name of the Victim 2 Landscaping Business—an account OBIORA controlled.

     oo.    In or about early March 2022—just days after Victim Company 3 followed the instruction in the BEC scheme email and wired $800,000 to the Victim 2 Landscaping Business Destination Account—OBIORA caused the Victim 2 Landscaping Business Destination Account to issue $798,000 in checks payable to other Destination Accounts.

    i.  a $473,000 check payable to the Painting Business, the company CC-3 had incorporated one month earlier.   The memo line of the check stated "54 Union Street";

    ii.  a $140,000 check payable to CC-2.   The memo line of the check stated "45 Shawmut Avenue";

    iii.  a $160,000 check to OBIORA's Victim 1 Logistics Business.   The memo line of the check stated "42 Hebron Street"; and

    iv.  a $25,000 check to an individual.

     pp.    On or about March 3, 2022, OBIORA messaged CC-4, "IM RICH" and forwarded a screenshot of a communication from Victim Company 3 confirming that it had wired $800,000.

     qq.    On or about March 4, 2022, when CC-4 questioned whether the wire confirmation was real, OBIORA messaged in response, "Oh its real…already moved it all too" and sent CC-4 photographs of receipts and bank documents showing the deposit of the checks described in paragraph 16(oo) above.   OBIORA also messaged CC-4 a calculator screen

indicating a 25 percent share of 800,000—the amount of BEC scheme proceeds that Victim Company 1 had sent.

rr.      Upon receiving the $473,000 in BEC scheme proceeds into the Painting Business Destination Account, OBIORA or CC-3 transferred $450,000 of those proceeds again:

     i.   to an individual for $120,000;

    ii.   to CC-2's Landscaping Business, for $200,000; and

   iii.   to a bank account in Nigeria for $130,000.

*Victim Company 4 - $64,597.41 BEC to CC-3's Painting Business*

ss.      In or around April 2022, a co-conspirator sent Victim Company 4 a BEC scheme email that purported to be from one of its suppliers.   The email provided new bank information for Victim Company 3 to pay its supplier.

tt.      Between on or about April 11, 2022 and on or about April 19, 2022—after Victim Company 4 wired $64,597.41 to the bank account identified in the email, which was a Citizens Bank Destination Account in the name of CC-3's Painting Business—OBIORA or CC-3 depleted the balance of the Painting Business' Destination Account through check, ATM, and cash withdrawals.

*Victim Company 5 – $375,000 BEC to the Painting Business and CC-5's Carpentry Business*

uu.      In or around April 2022, Victim Company 5 owed approximately $375,000 to an apparel supplier.   On or about April 6, 2022, a co-conspirator sent Victim Company 5 a BEC scheme email that caused it to wire $375,894.83 to the newly opened Destination Account at Wells Fargo in the name of Epoch, CC-3's company.

vv.      CC-3 immediately depleted the BEC scheme proceeds through three checks

13

totaling $374,000:

      i.  a $220,000 check payable to the Carpentry Business, which CC-5 had incorporated just over one month earlier.

     ii.  a $74,000 check payable to an individual; and

    iii.  an $80,000 check payable to an individual.

ww.    On or about April 7, 2022, CC-5 deposited the $220,000 check payable to their Carpentry Business into a Citizens Bank account in its name—an account that OBIORA controlled.

xx.    Within days, the Carpentry Business Destination Account issued checks payable to individuals totaling $195,000, including to an individual who had already received $80,000 of the BEC scam proceeds directly from CC-3's Painting Business.

16.    In this fashion, OBIORA, CC-1, CC-2, CC-3, CC-4, CC-5 and others known and unknown to the United States Attorney engaged in at least $6.5 million in financial transactions involving the proceeds of specified unlawful activity.

<u>COUNT ONE</u>
Conspiracy to Obtain a United States Passport through False Statements
(18 U.S.C. § 371)

The Acting United States Attorney charges:

17.     The Acting United States Attorney re-alleges and incorporates by reference paragraphs 1 and 2 and 10 through 12 of this Superseding Information.

18.     On or about May 23, 2023, in the District of Massachusetts and elsewhere, the defendant,

CHUKWUNONSO OBIORA,
a/k/a "Nonso Obiora",

conspired with CC-1 and others known and unknown to the Grand Jury to commit an offense against the United States, to wit, to obtain a United States passport through a false statement, that is, to make a false statement in an application for a passport with intent to induce and secure for his own use the issuance of a passport under the authority of the United States, contrary to the laws regulating the issuance of such passports and the rules prescribed pursuant to such laws, in violation of Title 18, United States Code, Section 1542.

All in violation of Title 18, United States Code, Section 371.

15

COUNT TWO
Money Laundering Conspiracy
18 U.S.C. § 1956(h)

The Acting United States Attorney further charges:

19.     The Acting United States Attorney re-alleges and incorporates by reference

paragraphs 1 through 9 and 13 through 17 of this Superseding Information.

20.     Between in or about March 2021 and in or about May 2023, in the District of

Massachusetts and elsewhere, the defendant,

CHUKWUNONSO OBIORA
a/k/a "Nonso Obiora",

conspired with CC-1, CC-2, CC-3, CC-4, CC-5 and others known and unknown to the Acting

United States Attorney to commit money laundering, that is, to conduct and attempt to conduct

financial transactions, to wit deposits to and withdrawals from accounts at financial institutions,

knowing that the property involved in such transactions represented the proceeds of some form of

unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is,

wire fraud, in violation of Title 18 United States Code, Section 1343, and knowing that the

transactions were designed, in whole and in part, to conceal and disguise the nature, location,

source, ownership, and control of the proceeds of specified unlawful activity, contrary to Title 18,

United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

16

PASSPORT FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(6))

The Acting United States Attorney further alleges:

21.     Upon conviction of the offense in violation of Title 18, United States Code, Section

371, set forth in Count One, the defendant,

CHUWKUNONSO OBIORA,
a/k/a "Nonso Obiora",

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section

982(a)(6), any conveyance, including any vessel, vehicle, or aircraft used in the commission of the

offense, and any property, real or personal, which constitutes, or is derived from proceeds traceable

to the offense and/or was used to facilitate, or was intended to be used to facilitate, the commission

of the offense.   The property to be forfeited includes, but is not limited to, the following:

     a.   a black iPhone 11 S/N F4HCGFJRN72;

     b.   a purple Samsung Galaxy Note 9 S/N RF8K8078GVK; and

     c.   a black iPhone 12 S/N DX3FVG2A0DXP.

22.     If any of the property described in Paragraph 21, above, as being forfeitable

pursuant to Title 18, United States Code, Section 982(a)(6), as a result of any act or omission of

the defendants –

     a.   cannot be located upon the exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third party;

     c.   has been placed beyond the jurisdiction of the Court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property which cannot be divided without
       difficulty;

17

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

of the defendant up to the value of the property described in Paragraph 21 above.

All pursuant to Title 18, United States Code, Section 982(a)(6).

<u>MONEY LAUNDERING FORFEITURE ALLEGATION</u>
(18 U.S.C. § 982(a)(1))

The Acting United States Attorney further alleges:

23.     Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1956 set forth in Count Two, the defendant,

CHUWKUNONSO OBIORA,
a/k/a "Nonso Obiora",

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

      a.   $3,326,014.48 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment);

      b.   a black iPhone 11 S/N F4HCGFJRN72;

      c.   a purple Samsung Galaxy Note 9 S/N RF8K8078GVK; and

      d.   a black iPhone 12 S/N DX3FVG2A0DXP.

24.     If any of the property described in Paragraph 23 above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

19

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

of the defendant up to the value of the property described in Paragraph 23 above.

　　　All pursuant to Title 18, United States Code, Section 982(a)(1).

SETH KOSTO
Digitally signed by SETH KOSTO
Date: 2024.05.21 13:11:02
-04'00'

_____
SETH B. KOSTO
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS


District of Massachusetts: May __, 2024